

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALTO MAR GIRASSOL, )
                      )
       Plaintiff, )
                      )     **No. 04 C 7731**
      v. )
                      )     **Judge John W. Darrah**
LUMBERMENS MUTUAL CASUALTY COMPANY, )
                      )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Alto Mar Girassol ("AMG"), filed suit against Defendant, Lumbermens Mutual Casualty Company, seeking confirmation of an arbitration award. Presently before the Court are: (1) AMG's Motion to Confirm Arbitration Award, (2) Lumbermens' Motion to Adjourn or Stay the Proceedings, and (3) AMG's Motion to Require Defendant to Provide Suitable Security As a Condition of Any Stay or Adjournment.

## BACKGROUND

AMG is an economic interest group established under the laws of, and with its principal place of business in, France. AMG was formed to provide various services in connection with the development of the Girassol oil exploration project off the coast of Angola. In 1998, AMG entered into two contracts with Elf Exploration Angola ("Elf") for the design, engineering, manufacture, assembly, and installation of undersea oil transport equipment in connection with the oil exploration project. In 1999, AMG entered into a Construction, Engineering and Design Professional Liability Policy for the Girassol project (the "Policy") with several insurers. Lumbermens was one of the

insurers under the Policy. Lumbermens accepted 62.5 percent of the coverage under the Policy, and the other insurers accepted the remaining 37.5 percent of the coverage. The insuring agreement provides for the application of French law to the litigation of any disputes between the parties.

Sometime thereafter, Elf claimed that the thermal insulation designed by AMG for the Girassol project was not in compliance with the contractual obligations. Elf requested, and AMG performed, certain remedial work to correct this asserted deficiency. AMG then made a claim under the Policy to recover the costs of this remedial work. The insurers denied AMG's claim.

In 2002, pursuant to Article 11 of the Policy, AMG requested arbitration of the dispute with the insurers before the International Chamber of Commerce ("ICC"). Thereafter, the ICC appointed a three-person arbitral tribunal to adjudicate the dispute in France. AMG then reached a settlement with one of the insurers, Liberty Mutual, an insurer that had accepted 12.5 percent of the coverage under the Policy. Accordingly, AMG reduced its claim in arbitration by this percentage.

In December 2003, after an initial stage of proceedings, the tribunal rendered a partial award which included, *inter alia*, that AMG's additional costs incurred in connection with the project were covered under Article 4.1 of the Policy. The tribunal deferred its decision on certain other issues. In March 2004, in response to AMG's request for interpretation of this partial award, the tribunal issue an addendum, which specified certain costs that AMG was entitled to recover.

On September 1, 2004, following further proceedings, the tribunal issued its Final Award, which adjudicated the remaining issues before the tribunal. The Final Award quantified the amounts that the insurers owed AMG as follows: (1) $6,710,102 for AMG's additional costs under the project, together with interest thereon; (2) $48,334 in arbitration costs; and (3) EUR 234.785.90 in attorney's fees. The tribunal declared the Final Award to be "immediately enforceable" in light of

Lumbermens' "precarious financial situation." On October 14, 2004, the award was signified[1] to Lumbermens.

On November 22, 2004, in response to AMG's request for interpretation of the Final Award, the tribunal issued an addendum to the Final Award (the "Addendum"). In the Addendum, the tribunal confirmed that the amounts that the insurers were found to owe AMG in the Final Award were to be adjusted to take into account the settlement between AMG and Liberty Mutual. Thus, Lumbermens. which had accepted 62.5 percent of the coverage under the Policy, was found liable for 71.43 percent of the amounts set forth in the Final Award. On December 14, 2004, Lumbermens filed an appeal of the award in the Paris Court of Appeal, in which Lumbermens sought to wholly set aside the award upon grounds established under French law.

## ANALYSIS

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *codified at* 9 U.S.C. § 201 *et seq.*, provides for the enforcement of arbitration agreements and the confirmation of foreign arbitral awards. New York Convention, arts. II, III. Any party to a foreign arbitration award may seek confirmation in a district court of an arbitral award within three years after the award was made. 9 U.S.C. § 207. "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention." 9 U.S.C. § 207. Thus, the arbitral award must be enforced unless the party opposing enforcement presents evidence of one of the enumerated defenses under Article V of the New York Convention.

---

[1]Signification involves the endorsement of the award by a French enforcement judge and delivery to the party against whom enforcement is sought.

*See Slaney v. International Amateur Athletic Federation*, 244 F.3d 580, 588 (7th Cir. 2001); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2003).

The grounds for refusing to enforce an award are limited to the specific defenses enumerated in Article V of the New York Convention, which provides in relevant part:

> 1. Recognition and enforcement of the award may be refused . . . only if [the] party [requesting refusal] furnishes . . . proof that:
>
> . . .
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

The party opposing enforcement bears the burden of proving the existence of the enumerated defenses. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 368 (5th Cir. 2003) (*Karaha I*); *Europcar Italia v. Maiellano Tours, Inc.*, 156 F.3d 310, 313 (2nd Cir. 1998) (*Europcar*).

The New York Convention also provides the district court discretion to adjourn enforcement proceedings where an application has been made in the originating country to have the arbitral award set aside or suspended. Article VI of the New York Convention provides:

> If an application for the setting aside or suspension of the award has been made to a competent authority [of the country in which, or under the law of which, that award was made], the authority before which the award is sought to be relied upon may, if it considers proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

The district court must exercise its discretion in determining whether to adjourn or stay the confirmation of an arbitral award, balancing the New York Convention's policy favoring

4

confirmation of arbitral awards against the principle of international comity embraced by the New York Convention. *See Europcar*, 156 F.3d at 317; *Four Seasons Hotels & Resorts v. Consorcio Barr*, 377 F.3d 1164, 1172 (11 Cir. 2004); *MGM Productions Group, Inc. v. Aeroflot Russian Airlines*, 2003 WL 21108367 (S.D.N.Y. May 14, 2003). If parallel proceedings are ongoing in the originating country and in the district court and there is a possibility that the award will be set aside, "a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceeding." *Europcar*, 156 F.3d at 317. Factors relevant to the exercise of this discretion include: (1) the general objectives of arbitration in the expeditious resolution of disputes and the avoidance of expensive and protracted litigation; (2) the status of the foreign proceedings and the estimated time that those proceedings will be resolved; (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceeding under a less deferential standard of review; (4) the characteristics of the foreign proceeding, including: (i) whether it was brought to enforce an award (which tends to favor a stay) or to set aside the award (which tends to weigh in favor of enforcement), (ii) whether the foreign proceeding was initiated before the underlying enforcement proceeding so as to raise concerns of international comity, (iii) whether it was initiated by the party now seeking enforcement in federal court, and (iv) whether it was initiated under circumstances indicating an intent to hinder or delay resolution of the dispute; (5) a balance of the hardships to each party; and (6) any other circumstances that could shift the balance in favor of or against a stay. *See Europcar*, 156 F.3d at 317-18.

5

The parties concede that the issues before the Court are governed by the New York Convention. Lumbermens' sole argument against confirmation of the award is that, pursuant to Article V(1)(e), the award should not be confirmed because it has been suspended by operation of French law.

> Article 1506 of the French Nouveau Code de Procédure ("NCP") provides:

> > The time limit to bring a review as referred to in Articles 1501, 1502 and 1504 shall operate as a stay of execution of arbitral award. The review brought within this time limit shall equally operate as a stay of execution.

Under Lumbermens' interpretation of Article V(1)(e) of the New York Convention, any country that has legislation suspending awards during the time allowed for appeal and during the appeal process, an arbitral award from the country is unenforceable under Article V(1)(e) of the New York Convention because the award has been suspended under the laws of that country. This interpretation is inconsistent with the language of Article V(1)(e). Article V(1)(e) provides for the refusal of enforcing an award of another country if the award has been set aside or suspended "by a competent authority" of the country in which the award was made *or* if the award has been set aside or suspended by a competent authority (presumably from a different country than the one which the award was made) applying the law of the country in which the award was made.

Furthermore, Lumbermens' interpretation is inconsistent with the intent of the New York Convention. One of the principal purposes of the New York Convention was to facilitate the enforcement of arbitration awards by enabling parties to enforce the awards in third countries without first having to obtain either confirmation of such awards or leave to enforce the awards from a court in the country of the arbitral situs. Accordingly, under the New York Convention, a court

6

maintains the discretion to enforce an arbitral award even if nullification proceedings are occurring in the country where the award was rendered. *See* New York Convention, art. VI; *Karaha I*, 335 F.3d at 366-67. Under Lumbermens' interpretation, the mere application for setting aside an award in the country of origin would immediately result in the denial of enforcement under the New York Convention in other countries. "This obviously runs counter to the reasoning behind the term "binding" in Article V(1)(e) and the adjournment provisions of Article VI." A. van den Berg, *The New York Arbitration Convention of 1958: Towards a Uniform Judicial Interpretation* 352 (1981); *see also Republic of Gabon v. Swiss Oil Corp.* (Cayman Islands Grand Court June 17, 1988) (summarized in XIV ICCA Yearbook of Commercial Arbitration 621, 624 (Kluwer, A. van den Berg ed. 1989); *SSP Ltd. v. Arab Republic of Egypt* (District Court of Amsterdam, The Netherlands July 12, 1984 (summarized in X ICCA Yearbook of Commercial Arbitration 487, 490 (Kluwer, A. ven den Berg ed. 1985) (collectively, rejecting argument that NCP 1506 constituted competent authority suspending arbitration under Article V(1)(e).

Based on the above, Lumbermens has failed to establish grounds for refusing to enforce the Final Award under the New York Convention.

However, Lumbermens has demonstrated that a stay of the proceedings pursuant to Article VI is appropriate. While a stay will cause an immediate delay in the resolution of the dispute, this delay is likely shorter than the possible delay that would occur if this Court confirms the award and the French court ultimately sets the award aside resulting in further litigation likely involving more complex issues. Waiting for the French court to rule will also likely aid in the avoidance of more expensive additional litigation that could arise.

7

Importantly, in light of the appeal presently pending in the French court, issues of international comity arise. Evidence indicative of an intent by Lumbermens to simply hinder or delay the resolution of the dispute is also lacking. Furthermore, a requirement that Lumbermens post adequate security lessens the hardship to AMG, which argues that a stay would cause a hardship to AMG in light of Lumbermens' distressed financial condition.

Based on the above, the proceedings should be stayed; and Lumbermens should be required to provide suitable security as a condition of the stay. *See Nedagro v. Zao Konversbank*, 2003 WL 151997 (S.D.N.Y. Jan. 21, 2003); *Rive v. Briggs of Cancun, Inc.*, 2000 WL 98127 (E.D. La. Jan. 26, 2000) (collectively, granting stay of enforcement proceedings and requiring posting of security).

## CONCLUSION

For the reasons stated above, Lumbermens' Motion to Adjourn or Stay the Proceedings and AMG's Motion to Require Defendant to Provide Suitable Security As a Condition of Any Stay or Adjournment are granted. Lumbermens is ordered to post suitable security, in the amount of Lumbermens' share of the Final Award, together with interest thereon, for the duration of the stay. In light of the stay, AMG's Motion to Confirm Arbitration Award is denied without prejudice to refile.

Dated: April 12, 2005

JOHN W. DARRAH
United States District Judge

8